UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARLE I. ERMAN,

Plaintiff,

v.

Case Number 10-13499
Honorable David M. Lawson

DYLITE E. ADAMS, ESTATE OF DWITT GREGORY, ESTATE OF BERTHA BOISE, NANCY SHELLENBARGER, GREGORY REYNARD, CRYSTAL REYNARD, SAMUEL C. SMITH, R. SHULTS EXCAVATING

Defendants.
_______________________________________/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the plaintiff's motion for summary judgment. Plaintiff Earle Erman is the court-appointed receiver of BBC Equities, LLC and Bravata Financial Group, LLC (the Receivership Entities), erstwhile investment companies operated by John J. Bravata and Richard Trabulsy. The Receivership Entities were sued by the Securities and Exchange Commission for fraud and statutory violations, and the Court appointed the Receiver to identify and marshal their assets. The Receiver seeks to quiet title to two properties — one commonly known as 2511 West M-43 Highway, Rutland Township, Michigan (the Hastings Property) and the other commonly known as 8109 4th Street, Three Rivers, Michigan (the Fourth Street Property) — that allegedly were conveyed to the Receivership Entities by one or more of the defendants in exchange for shares of the investment companies. A default has been entered against every defendant but R. Shults Excavating and Dylite Adams. The Court allowed R. Shults Excavating to place a construction lien in the amount of $6,051.63 on the Hastings Property in satisfaction of its claim on the Hastings

Property. No dispute remains as to the Fourth Street Property. Only defendant Dylite Adams's claim to the Hastings Property remains in dispute.

The Receiver argues that it is undisputed that (1) Adams executed a quit claim deed transferring her interest in the Hastings Property to Hastings Property 1, LLC; (2) she was paid $99,550.60 on account of the Class C shares she received for transferring her interest in Hastings Property 1, LLC to BBC Equities; and (3) she confirmed the transfer of the Hastings Property in a July 31, 2009 affidavit and a January 14, 2010 letter from her attorney to the Receiver. In addition, the Receiver argues that he is entitled to summary judgment because Adams must be judicially estopped from arguing any position inconsistent with her early sworn testimony that she sold "land" to BBC Equities in return for 500,000 Class C shares in BBC Equities. Adams argues that (1) the assignment of membership interests she allegedly signed did not transfer ownership of the Hastings Property; (2) there was a failure of consideration in the transfer of the Hastings Property; (3) the Receiver cannot rely on the assignment of membership interest and the amendment thereto because he can neither produce the original nor authenticate the documents; and (4) Antonio Bravata exerted undue influence over her. The Court heard oral argument on the motion on September 7, 2011 and now finds that the undisputed facts demonstrate that Ms. Adams transferred her interest in the Hastings Property to a limited liability company entirely owned by BBC Equities, one of the Receivership Entities. Therefore, the Receiver is entitled to summary judgment quieting title in the Receivership Entities as a matter of law.

I.

The Hastings Property is a parcel of land in Rutland Township, Barry County, Michigan consisting of approximately 40 acres, described as follows:

> A parcel in the Southwest 1/4 of Section 14, Town 3 North, Range 9 West, Rutland Township, Barry County, Michigan, described as: Beginning at the South 1/4 corner of Section 14, Town 3 North, Range 9 West, Rutland Township, Barry County, Michigan; thence North 89 degrees 09 minutes 14 seconds West, 619.58 feet along the South line of said section; thence North 00 degrees 20 minutes 55 seconds West, 1618.13 feet; thence North 84 degrees 22 minutes 07 seconds West, 371.06 feet; thence North 17 degrees 48 minutes 37 seconds East, 515.12 feet; thence North 78 degrees 07 minutes 15 seconds East, 208.39 feet; thence North 00 degrees 26 minutes 47 seconds West, 452.71 feet to the centerline of Highway M-43; thence Easterly, 216.17 feet along the arc of a curve to the right, the radius of which is 1042.14 feet, the central angle of which is 11 degrees 53 minutes 04 seconds and the chord of which bears North 84 degrees 38 minutes 59 seconds East, 215.78 feet; thence continuing along said centerline and along the East and West 1/4 line of said Section 14 South 89 degrees 24 minutes 29 seconds East, 405.08 feet to the center 1/4 corner of said Section 14; thence South 00 degrees 26 minutes 47 seconds East, 2643.36 feet along the North and South 1/4 line to the point of beginning.

The Fourth Street Property is located in St. Joseph County, Three Rivers, Michigan and is commonly known as 8109 4th Street. The Receiver alleges that BBC Holdings 1, LLC has a fee simple interest in the Fourth Street Property and that BBC Equities owns 100% of the membership interest in BBC Holdings 1, LLC.

Dylite Adams is the mother-in-law of John Bravata and maternal grandmother of Antonio Bravata. Adams's husband, Robert Adams, managed the couples' finances until his death on January 4, 2007. After Robert Adams's death, John and Antonio Bravata offered to assist Adams with her property and finances. In February 2007, Adams gave John and Antonio Bravata $25,000 to invest in shares of BBC Equities, LLC. Upon her investment, a Comerica Bank account was opened in her name. Initially, Antonio was a joint signatory on the Comerica bank account so that he could help Adams pay bills. These facts are undisputed.

On July 18, 2007, the limited liability company Hastings Property 1, LLC was formed. The Articles of Organization stated that Adams was the owner, sole member, and registered agent for Hastings Property 1, LLC. Adams, however, contends that the Articles are a forgery and that she

never completed or signed the Articles of Organization and had no knowledge that Hastings Property 1, LLC ever existed. Adams's alleged signature on the Articles of Organization differs significantly from her signature on other documents she submitted to the Court.

On September 11, 2007, Adams allegedly executed and signed a document entitled "Assignment of Membership Interests." The Assignment purports to transfer 100% of Adams's interest in "Hastings Property, LLC 1" to BBC Equities, LLC in exchange for 500,000 class C shares of BBC Equities, LLC. Adams claims no recollection of signing that document. On July 8, 2008, the assignment was amended to correct a typographical error — the original assignment inadvertently assigned Adams's interest to Hastings Property, LLC 1 rather than Hastings Property 1, LLC, as intended. Adams likewise claims no recollection of signing the Amendment to Assignment of Membership Interest. However, on December 31, 2007, and over the next fourteen months, BBC Equities deposited a total of $99,550.60 into Adams's Comerica bank account.

On December 28, 2007, Adams executed a quitclaim deed (the Quitclaim Deed) transferring her interest in the Hastings Property to Hastings Property 1, LLC. Adams alleges that she executed the deed at the behest of Antonio Bravata, who had contacted her earlier that day and told her that she had to travel to the Barry County Register of Deeds office immediately. A snow storm that day made travel difficult, but Adams arrived to find Janice Davis, an employee of BBC Equities, LLC, waiting for her with the document she was told to sign. Adams alleges that she did not read or review the document before signing it and that the document was filed with the register of deeds immediately. Adams also alleges that she never received any form of compensation from BBC Equities, John Bravata, Antonio Bravata, or anyone else for signing the Quitclaim Deed.

On July 26, 2009, the U.S. Securities and Exchange Commission (SEC) filed a lawsuit against John Bravata, Richard Trabulsy, Antonio Bravata, BBC Equities, LLC, Bravata Financial Group, LLC, (BBC/Bravata defendants) and Shari Bravata alleging that the BBC/Bravata defendants engaged in a scheme to defraud investors in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, and various regulations promulgated under that legislation. On July 27, 2009, the Court entered an order granting in part the SEC's motion for a temporary restraining order and scheduling hearing on the request for a preliminary injunction and appointment of a receiver. The TRO froze the assets of the defendants, including the bank account held jointly by Dylite Adams and Antonio Bravata.

On July 31, 2009, Adams, in an attempt to release her Comerica bank account from the asset freeze order, submitted an affidavit to the Court, which was filed on August 4, 2009 by George B. Donnini, attorney for BBC Equities and Bravata Financial. Her affidavit stated, among other things:

> I, Dylite Adams, state that:
> 1. I reside in Kalamazoo, Michigan.
> 2. I am 72 years old.
> 3. In February 2007, after my husband died, I gave John Bravata (John), and my grandson, Antonio Bravata (Antonio), $25,000 of the money I had previously invested through Raymond James.
> 4. With my permission, John and Antonio invested the $25,000 in shares of BBC Equities, LLC, and I became a Class C investor.
> 5. Upon my investment, Comerica Bank Account No. xxxxxx9556 was opened in my named (the Comerica account).
> 6. In September 2007, I sold land to BBC Equities in exchange for an additional 500,000 Class C shares in BBC Equities.
> 7. With my permission, Antonio jointly held the Comerica Account with me.
> 8. Antonio jointly held the Comerica Account so that he could help me pay bills and so he could use those funds for my final expenses when I pass.
> 9. Antonio no longer jointly holds the Comerica Account with me. I am the sole owner and the only person with authorized access to the funds in the account.
> 10. As a BBC Equities investor, I am entitled to quarterly dividend payments.
> 11. My quarterly dividend payments are deposited into the Comerica Account.

> 12. Since September 2007, I have occasionally invested smaller amounts in BBC Equities totaling approximately $4,000 for investments in my children's name. I am listed as a co-investor on my children's accounts. Until recently, dividends from these accounts were reinvested into additional BBC Equities' shares. They were not deposited into the Comerica Account.
> 13. I use the money in the Comerica Account to pay my day-to-day living expenses.
> 14. The Court's Temporary Restraining Order froze the Comerica Account because Antonio was listed on it as a joint account-holder.
> 15. Unless the account is unfrozen, I will not be able to pay for essential living expenses.
> 16. I respectfully request that the Court unfreeze the Comerica Account.

Pl.'s Mot. for Summ. J., Ex. 9, Adams July 31, 2009 affidavit; *see also SEC v. Bravata*, No. 09-12950, Dylite Adams's Affidavit [dkt. #33]. The affidavit was subscribed by Dylite Adams and bears the signature of a notary public.

The Court considered Adams's affidavit when it entered its August 21, 2009 order granting Richard Trabulsy's petition to permit borrowing against his life insurance policy to pay attorney's fees, denying a renewed motion by corporate defendants to unfreeze assets to pay attorney's fees, denying other requests to unfreeze assets, and scheduling status conference on motion to continue preliminary injunction and for appointment of receiver [dkt. #49, Case No. 09-12950]. The Court's August 21, 2009 order recapped Adams's statement in her affidavit and noted the SEC's objections to unfreezing her Comerica bank account. The Court ultimately maintained the asset freeze order with respect to Adams's Comerica bank account until the record could be developed in greater detail.

On September 2, 2009, the Court entered an order appointing Earle Erman as the Receiver of the Receivership Entities. The Receivership Order granted the Receiver the powers, authorities, rights, and privileges described within the order necessary to marshal and preserve the assets of the Receivership Entities. On December 16, 2009, the Receiver moved for authority to list for sale the

Hastings Property, the Fourth Street Property, and property located at 8680 W. Grand River Boulevard, Brighton, Michigan. The Court granted that motion on January 6, 2010.

On January 14, 2010, attorney Jeannine Bolhouse, counsel for Dylite Adams, corresponded with the Receiver to dispute his authority to list the Hastings Property for sale, arguing that although Adams conveyed her interest to Hastings Property 1, LLC , attorney Bolhouse had no evidence that BBC Equities had any interest in Hastings Property 1, LLC. Significantly, Bolhouse wrote:

> Pursuant to title work, the limited liability company Hastings Property 1, LLC is listed as the fee simple owner of the Hastings Property. Ms. Adams quit claimed the Hastings Property into the Hastings Property 1, LLC on December 28, 2007. Ms. Adams set up Hastings Property 1, LLC on July 18, 2007, and is the sole member of Hastings Property 1, LLC. I am not in possession of any documentation indicating that Ms. Adams transferred her interest in the Hastings Property or Hastings Property 1, LLC to any other party.

Mot. for Summ. J., Ex. 5, Jan. 14, 2010 Letter from Bolhouse to Receiver.

On June 9, 2010, the Court entered an order authorizing the Receiver to file a complaint to quiet title, and on September 2, 2010 the Receiver commenced the present action. The Receiver's complaint alleges that title insurance information obtained from First American Title Insurance Company establishes that the fee simple interest in the Hastings Property is held by Hastings Property 1, LLC, and that BBC Equities, LLC owns 100% of the membership interests of Hastings Property 1, LLC.

On January 12, 2011, the Clerk of the Court entered a default against defendants Crystal Reynard, Gregory Reynard, Samuel Smith, and the Estate of Dewitt Gregory. On February 14, 2011, the Court allowed R. Shults Excavating to place a construction lien in the amount of $6,051.63 on the Hastings Property to satisfy its claim for work performed on that property. On February 15, 2011, the Clerk of the Court entered a default against defendants Nancy Shellenbarger

and the Estate of Bertha Boise. Presently, only defendant Dylite Adams's claim to the Hastings Property remains in dispute.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where the facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Fed. R. Civ. P. 56(c)(1)(A), (B); *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the party opposing the motion contends that facts are in dispute, he may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). At the summary judgment stage,

"the evidence should be viewed in the light most favorable to the non-moving party[, and] the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat–Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant

submits evidentiary materials to establish all of the elements of the claim or defense"). In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnote omitted).

A default has been entered against every defendant but R. Shults Excavating and Dylite Adams, whose claims pertain only to the Hastings Property. The material facts establishing title to the Hastings Property and Fourth Street Property in the Receivership are taken as true as to the defendants in default. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885))." The Receiver concedes the claim of R. Shults Excavating in the property and has acknowledged its construction lien.

The Receiver contends that defendant Adams has no interest in the Hastings Property for the several reasons noted above.

A.

The Receiver argues that Adams should be judicially estopped from denying that she sold the Hastings Property to BBC Equities because the Court relied on her July 31, 2009 affidavit in its August 21, 2009 order in *SEC v. Bravata*, No. 09-12950.

"Judicial estoppel is an equitable doctrine that 'preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving

success on one position, then arguing the opposite to suit an exigency of the moment.'" *Longaberger Co. v. Kolt*, 586 F.3d 459, 470 (6th Cir. 2009) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990)). The doctrine applies where a party is "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Ibid.* (internal quotation marks and citations omitted). Although the application of the doctrine is not "reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)), the Supreme Court outlined the factors that typically inform the courts' decisions whether to apply the doctrine in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations omitted).

Courts must use caution in applying the doctrine "to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne Indus., Inc.*, 911 F.2d at 1218. The Sixth Circuit has held that

judicial estoppel does not apply to cases where the challenged misconduct amounts to "nothing more than mistake or inadvertence." *Browning v. Levy*, 283 F.3d 761,776 (6th Cir. 2002).

Adams argues in the present case that she did not exchange the Hastings Property for shares of BBC Equities because the Assignment of Membership Interests was executed three months before she transferred her interest in the Hastings Property to Hastings Property 1, LLC. She took the opposite position in the *SEC v. Bravata* case when she swore in her affidavit that she "sold land to BBC Equities in exchange for an additional 500,000 Class C shares in BBC Equities." Pl.'s Mot. for Summ. J., Ex. 9, Adams July 31, 2009 aff. ¶ 6. Adams contends that the affidavit is ambiguous because it refers simply to "land" and not the Hastings Property. That assertion is disingenuous for two reasons. First, despite having had the opportunity, Adams has failed to present evidence of other land transactions with BBC Equities that might be the antecedent reference to the term "land" as she used in her affidavit. Second, at the time of the Assignment of Membership Interests, Hastings Property 1, LLC had no assets; therefore Adams would have received 500,000 shares effectively for nothing. It was not until Adams transferred her interest in the Hastings Property to Hastings Property 1, LLC that BBC Equities received any consideration for the 500,000 shares. The Court believes that it was the parties' intent to transfer shares of BBC Equities for the only thing of value involved in the transaction: the Hastings Property.

However, Adams's inconsistent position alone is not enough to justify the application of judicial estoppel. The Supreme Court has refused to set inflexible rules to determine the "'circumstances under which judicial estoppel may appropriately be invoked,'" instructing courts to consider factors that include the degree to which Adams succeeded in persuading the Court to

accept her earlier position and whether she would derive an unfair advantage. *New Hampshire v. Maine*, 532 U.S. at 750 (quoting *Allen*, 667 F.2d at 1166).

Adams did not accomplish her goal of unfreezing her Comerica bank account. The Court rejected her position at the time because the record required further factual development. Adams asserted an inconsistent position in the earlier lawsuit, but it would not be proper to declare an estoppel here because she did not prevail in that position or derive an unfair advantage. Her statements in the affidavit, however, amount to convincing admissions against her that may be considered on summary judgment. *See* Fed. R. Evid. 801(d)(2)(A); Fed. R. Civ. P. 56(c)(1)(A).

B.

The Receiver also argues that Adams undisputedly executed the deed transferring the Hastings Property to Hastings Property 1, LLC in addition to the Assignment and the Amendment transferring her interest in Hastings Property 1, LLC to BBC Equities. Adams argues that (1) the contract transferring her interest in the Hastings Property is invalid because she did not receive consideration; (2) the Assignment and Amendment are inadmissible evidence; (3) the Receiver is not in possession of the original signed Assignment and Amendment; (4) the transfer of the Hastings Property is void because Antonio Bravata exerted undue influence; and (5) the transfer of the Hastings Property is void because Hastings Property 1, LLC never existed. These arguments lack merit, because no material facts support them.

1.

Adams argues that the Quitclaim Deed is void because she did not receive any consideration for transferring the Hastings Property. The undisputed facts suggest otherwise. On September 11, 2007, Adams transferred her interest in Hastings Property 1, LLC to BBC Equities in exchange for

500,000 shares of BBC Equities Class C Membership Interests. As noted earlier, at that time, Hastings Property 1, LLC had no assets, meaning Adams received 500,000 Class C shares for absolutely no consideration. Additionally, her September 28, 2007 interest payment did not include any distribution owing from her Class C shares. Roughly three months later, she signed the Quitclaim Deed transferring her interest in the Hastings Property to Hastings Property 1, LLC "for no consideration of less than One Hundred and 00/100 ($100.00) Dollars as a contribution to capital . . . ." Mot. for Summ. J., Ex. 1, Quitclaim Deed. Three days later she received a Class C distribution of $15,000. Although the process was convoluted, the only reasonable inference that can be drawn is that the parties intended to transfer the Hastings Property in return for the 500,000 shares of BBC Equities Class C membership interests. Adams's admission in her affidavit confirms that conclusion.

2.

Adams's argument that the Assignment and Amendment are not admissible as evidence because the Receiver has no way to authenticate the documents is equally unpersuasive. Federal Rule of Evidence 56(c) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But there is no doubt that the Assignment and Amendment are authentic. The Amendment to the Assignment, which bears Adams's signature and reiterates her intent to transfer her membership interest in Hastings Property 1 LLC to BBC Equities, is signed by John Sellers. Adams has neither argued nor offered evidence to show that John Sellers is unable or unwilling to authenticate the Amendment to the Assignment. The Amendment states:

> For valuable consideration, the undersigned parties hereby acknowledge and agree that reference in the Assignment to Hastings Property, LLC 1, a Michigan limited

> liability company, was a typographical error and the parties intended the reference to be Hastings Property 1 LLC, and the Seller[, Adams,] intended to thereby assign to Buyer[, BBC Equities] one hundred (100%) of the issued and outstanding membership interests in Hastings Property 1 LLC.

Receiver's Mot. for Summ. J., Ex. 7, Amendment to Assignment of Membership Interests.

Moreover, comparing the signatures on the Assignment and Amendment with Adams's signature on the Quitclaim Deed yields the unmistakable conclusion that the signatures on the former belong to Adams, establishing that the documents are authentic. *See* Fed. R. Evid. 901(b)(3).

3.

The Receiver's inability to produce the original signed Assignment and Amendment does not preclude summary judgment. A duplicate will do if: (1) the original is lost or destroyed; (2) the original is not obtainable; (3) the original is in the possession of an opponent; or (4) the writing deals with collateral matters. Fed. R. Evid. 1004.

Adams also argues that the Receiver cannot rely on the duplicates because Federal Rule of Evidence 1003 authorizes the admission of a duplicate only when there is no genuine question as to the authenticity of the original. However, the Court does not believe that there is a "genuine" question as to the authenticity of the original Assignment and Amendment. Adams's suggestion that she does not remember signing the Assignment and Amendment does not establish a material fact dispute. As noted above, comparison of the signatures leads the Court to conclude that she signed them. Moreover, the fact that Adams started receiving quarterly checks for over $15,000 just days after she signed the Quitclaim Deed is convincing evidence that the Assignment and Amendment were executed as the Receiver contends. Therefore, the Court will accept the duplicates because there is no genuine question as to their authenticity.

4.

Adams argues that John and Antonio Bravata took advantage of her weakened condition and influenced her to sign documents without proper review and advice. She contends that John and Antonio knew that she was not financially savvy and convinced her to engage in the transactions to her detriment. Adams cites case law that details the burden of proof required to counter the presumption of undue influence in bargains with the mentally incompetent and argues that those transactions should be voided. *See Beattie v. Bower*, 290 Mich. 517, 287 N.W. 900 (1939) ("When a party deals with a man whom he knows to be of weak intellect, and the good faith of such dealings [is] challenged, the burden of proof is with the party who has dealt with the weak-minded person to show that no undue advantage was taken."). But Adams has not argued that she is mentally incompetent, nor offered any evidence to suggest that she is so handicapped. The burden of proof to show undue influence, therefore, rests with Adams.

"To establish undue influence it must be shown that the grantor was subject to threats, undue flattery, fraud, misrepresentation, or physical or moral coercion 'sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will.'" *In re Conant Estate*, 130 Mich. App. 493, 497, 343 N.W.2d 593, 595 (1983) (quoting *Kar v. Hogan*, 399 Mich. 529, 537, 251 N.W.2d 77, 78 (1976) *overruled on other grounds by In re Estate of Karmey*, 468 Mich. 68, 658 N.W.2d 796 (2003) (holding that no presumption arises by fact of marriage)). "'The presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction.'" *In re Estate of Karmey*, 468 Mich. at 73, 658 N.W.2d at 798 (quoting *Kar*, 399 Mich. at 537, 251 N.W.2d at 78).

"A showing of mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of the execution of the relevant document." *Tinsley v. General Motors Corp.*, 227 F.3d 700, 705 (6th Cir. 2000) (citing *Kigar v. Michigan Conference Ass'n of Seventh-Day Adventists (In re Estate of Erickson)*, 202 Mich. App. 329, 331, 508 N.W.2d 181, 183 (1993)); *see also Kar*, 399 Mich. at 537, 251 N.W.2d at 78. Even if a court presumes undue influence, the ultimate burden of proof does not shift; the "petitioner must still prove the existence of undue influence based on the preponderance of the evidence." *In re Estate of Haynes*, No. 235232, 2003 WL 22715781, at *1 (Mich. Ct. App. Nov. 18, 2003) (citing *Kar*, 399 Mich. at 538, 251 N.W.2d at 79).

To benefit from the presumption of undue influence, Adams must present evidence that would establish (1) the existence of a confidential or fiduciary relationship between her and John or Antonio; (2) John, Antonio, or an interest they represent benefitted from a transaction; and (3) John or Antonio had an opportunity to influence her decision in that transaction. *Karmey*, 468 Mich. at 73, 658 N.W.2d at 798. She has not offered such evidence.

"The existence of a confidential relationship or fiduciary relationship is a question of fact." *Taylor v. Klahm*, 40 Mich. App. 255, 264, 198 N.W.2d 715, 720-21 (1972) (citing *In re Wood's Estate*, 374 Mich. 278, 282-83, 285, 132 N.W.2d 35, 39-40 (1965) *overruled on other grounds by Widmayer v. Leonard*, 422 Mich. 280, 373 N.W.2d 538 (1985)). Adams has presented the following evidence that a confidential relationship existed. First, her July 31, 2009 affidavit states that "Antonio jointly held the Comerica Account so that he could help me pay bills and so he could use those funds for my final expenses when I pass." Mot. for Summ. J., Ex. 9, Adams's July 31, 2009

aff. ¶ 8. Second, she contends that she trusted John and Antonio to act in her best interest because she was in a fragile mental and emotional state after her husband's death.

"A confidential or fiduciary relationship exists when one party has placed complete trust in the other party who has the requisite knowledge, resources, power, or moral authority to control the subject matter at issue." *In re Estate of Rangel*, No. 283516, 2009 WL 1442387, at *2 (Mich. Ct. App. May 21, 2009) (citing *In re Estate of Karmey*, 468 Mich. at 74-75, 658 N.W.2d at 799). Such a relationship might exist where "a person enfeebled by poor health relies on another to conduct banking or other financial transactions." *In re Estate of Swantek*, 172 Mich. App. 509, 514, 432 N.W.2d 307, 309 (1988) (citing *Van't Hof v. Jemison*, 291 Mich. 385, 393-94, 289 N.W. 186, 189 (1939) and *First National Bank & Trust Co. of Marquette v. Albert*, 66 Mich. App. 252, 261, 238 N.W.2d 827 (1975) (holding that confidential relationship existed where, immediately before being hospitalized, decedent, ill and very weak, entrusted individual with checks and asked that they be deposited into decedent's individual account)). However, "mere assistance with banking activities and other physical tasks alone is insufficient to establish a fiduciary, confidential relationship. Rather, there must also be evidence that one party exercises complete control over the other party or that one party has placed complete trust in the other party to control the subject matter at issue." *In re Estate of Ostrowski*, No. 292941, 2010 WL 5373828, at *5 (Mich. Ct. App. Dec. 28, 2010) (citing *In re Estate of Karmey*, 468 Mich. at 74-75, 658 N.W.2d at 799). Additionally, the existence of a family relationship does not, by itself, establish a fiduciary relationship. *Mannausa v. Mannausa*, 370 Mich. 180, 184, 121 N.W.2d 423, 425 (1963) ("In cases involving conveyances from parent to child there is a rebuttable presumption of undue influence only where a fiduciary relationship is found to exist."). The ultimate question in determining whether a confidential

relationship existed is "whether [Adams] was governed by [John's or Antonio's] advice or dependent on them to make decisions. *In re Estate of Kurrle*, No. 295841, 2011 WL 1198198, at *1 (Mich. Ct. App. Mar. 31, 2011) (citing *Salvner v. Salvner*, 349 Mich. 375, 383-84, 84 N.W.2d 871, 874-75 (1957)).

Adams has not produced evidence that would convince a fact finder that she depended on John or Antonio to make decisions. She only has asserted that after her husband died in February 2007, she gave John and Antonio permission to invest $25,000 of her money in shares of BBC Equities and opened a bank account with Comerica Bank and gave Antonio access to it to help her pay bills. Those facts do not establish a confidential relationship for several reasons. First, Adams initially invested only $25,000 of the funds she held at Raymond James. Adams, therefore, was managing the remainder of her financial affairs. Second, although Adams alleges that Antonio was given access to her Comerica bank account to help pay bills, she does not contend that he actually paid any of her bills or that she was unable to pay them. Her lack of reliance on Antonio is highlighted by the fact that Adams removed Antonio as a signatory on the Comerica bank account. John and Antonio's decision to take advantage of their grandmother does not rise to the level of undue influence as a matter of law. Moreover, Adams's decision to accept the dividend payments and not repudiate the transfer constitutes ratification of John and Antonio's conduct. *Captial Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530 (6th Cir. 1986) (noting that "[f]ailure to repudiate an unauthorized agreement and accepting the benefits of such an agreement can constitute a ratification" so long as the "principal ha[d] knowledge of all material facts").

Because Adams was not unduly influenced, she cannot escape the legal effect of the Quitclaim Deed, Assignment, and Amendment simply because she did not read them. "'The

stability of written instruments demands that a person who executes one shall know of its contents or be chargeable with such knowledge. If [s]he cannot read, [s]he should have a reliable person read it to h[er]. H[er] failure to do so is negligence which estops h[er] from voiding the instrument on the ground that [s]he was ignorant of its contents, in the absence of circumstances fairly excusing h[er] failure to inform h[er]self.'" *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 461 (6th Cir. 1986) (quoting *Sponseller v. Kimball*, 246 Mich. 255, 260, 224 N.W. 359 (1929)).

5.

Adams argues that the transfer of the Hastings Property is void because Hastings Property 1, LLC never existed. In support of her argument, she submitted an affidavit in the present case that states:

> I did not open the limited liability company Hastings Property 1 LLC on July 18, 2007. I did not complete or file the Articles of Organization with the State of Michigan. I did not sign the Articles of Organization. I have no knowledge of who opened Hastings Property 1 LLC or who forged my signature.

Adams's Resp., Ex. A, Adams' June 28, 2011 Aff. ¶¶ 18-19. However, Adams's argument must be rejected.

Under the doctrine of incorporation by estoppel: "Where a body assumes to be a corporation and acts under a particular name, a third party dealing with it under such assumed name is estopped to deny its corporate existence." *Duray Dev., LLC v. Perrin*, 288 Mich. App. 143, 152-53, 792 N.W.2d 749, 759 (2010) (quoting *Estey Mfg. Co. v. Runnells*, 55 Mich. 130, 20 N.W. 823 (1884)). The doctrine has been extended to apply to limited liability companies. *Id.* at 161, 792 N.W.2d at 760. Although the doctrine generally is invoked to shield individual officers or partners from liability arising from the dealings of yet-to-be-formed companies, the Court may draw useful parallels to the present case.

Adams transferred her membership interest in Hastings Property 1, LLC in exchange for 500,000 Class C shares of BBC Equities. She then transferred her interest in the Hastings Property to Hastings Property 1, LLC, which was owned by BBC Equities. As the Court has discussed above, Hastings Property 1, LLC was an intermediary in the ultimate transaction in which Adams sold the Hastings Property for 500,000 Class C shares of BBC Equities. After signing the Quitclaim Deed transferring her interest in the Hastings Property, Adams began to receive quarterly dividend payments of over $15,000 that continued until just months before the Securities and Exchange Commission filed suit against BBC Equities, LLC, Bravata Financial Group, LLC, the Bravata Defendants, and Richard Trabulsy. Having done business with Hastings Property 1, LLC and received tangible benefits from doing so, Adams now cannot deny the existence of it to reap a windfall.

C.

Finally, and perhaps most convincingly, Adams's affidavit filed in the *SEC v. Bravata* case constitutes a solid admission that she conveyed the Hastings property and divested herself of any continued interest in it. Although that admission will not support the doctrine of judicial estoppel, it certainly dispels any question whether Adams has any further interest in that property.

In Michigan a quiet title action is a statutory cause of action. Michigan Compiled Laws § 600.2932(1) states that "[a]ny person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff." That statute "codifie[s] actions to quiet title and authorize[s] suits to determine competing parties' respective interests in land." *Republic Bank v. Modular One LLC*, 232 Mich. App. 444, 448, 591 N.W.2d 335, 337 (1998), *overruled on other*

*grounds by Stokes v. Millen Roofing Co.*, 466 Mich. 660, 649 N.W.2d 371 (2002). A party seeking to establish clear title has the burden of proof in a quiet title action and must make out a *prima facie* case that they have title to the disputed land. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 236 Mich. App. 546, 550, 600 N.W.2d 698, 700 (1999) (citing *Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219 (1984)). If the plaintiff establishes a *prima facie* case, the burden of proof shifts to the contestant to establish superior right or title to the property. *Beulah*, 236 Mich. App. at 550, 600 N.W.2d at 700 (citing *Boekeloo v. Kuschinski*, 117 Mich. App. 619, 629, 324 N.W.2d 104 (1982)).

By admitting that she conveyed the Hastings property, Adams has rendered impossible proof that she has an interest superior to that held by the Receivership entities. There is no material fact supporting Adams's claim that she has an interest in the Hastings property. The Receiver, therefore, has satisfied his burden of proof as a matter of law.

III.

The Court finds that the submissions of the parties does not establish a material fact dispute as to the ownership of the Hastings property. The Receiver has shown as a matter of law that the Receivership Entities have superior title to the Hastings and Fourth Street Properties, subject to the construction lien of R. Shults Excavating on the Hastings Property. Therefore, title to that land shall be quieted in the Receivership Entities.

Accordingly, it is **ORDERED** that the Receiver's motion for summary judgment [dkt. #29] is **GRANTED**.

It is further **ORDERED** that Earle Erman, in his capacity as Receiver of the Receivership Entities, holds full legal and equitable title to the Hastings Property in fee simple absolute, free and

clear of any and all claims of Estate of Dewitt C. Gregory, Estate of Bertha Boise, Nancy Shellenbarger, Dylite E. Adams, and any heirs of Bertha Boise, but subject to the construction lien filed by R. Shults Excavating. The Barry County register of deeds shall record this order in the chain of title for the Hastings Property.

It is further **ORDERED** that Estate of Dewitt C. Gregory, Estate of Bertha Boise, Nancy Shellenbarger, R. Shults Excavating, Dylite E. Adams, and any heirs of Bertha Boise have no right, title, or interest in the Hastings Property, either at law or in equity.

It is further **ORDERED** that Earle Erman, in his capacity as Receiver of the Receivership Entities, holds full legal and equitable title to the Fourth Street Property in fee simple absolute, free and clear of any and all claims of Samuel C. Smith, Crystal Reynard, and Gregory Reynard. The St. Joseph County register of deeds shall record this order in the chain of title for the Fourth Street Property.

It is further **ORDERED** that Samuel C. Smith, Crystal Reynard, and Gregory Reynard have no right, title, or interest in the Hastings Property, either at law or in equity.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 15, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 15, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL